UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHAWN C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-02091-TWP-MG |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Shawn C.[1] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. For the following reasons, the Court **remands** the decision of the Commissioner.

**I.   PROCEDURAL BACKGROUND**

On April 22, 2019, Shawn C. filed applications for DIB and SSI, alleging a disability onset date of August 2, 2016. (Filing No. 7-2 at 14.) His applications were initially denied on November 25, 2019, (Filing No. 7-4 at 6; Filing No. 7-4 at 17), and upon reconsideration on February 6, 2020, (Filing No. 7-4 at 29; Filing No. 7-4 at 36). Administrative Law Judge Donald G. D'Amato (the "ALJ") conducted a hearing on November 6, 2020, at which Shawn C., represented by counsel, and a vocational expert ("VE") appeared and testified. (Filing No. 7-2 at 39-59.) The ALJ issued a decision on December 29, 2020, concluding that Shawn C. was not entitled to benefits. (Filing

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

No. 7-2 at 11-30.)  The Appeals Council denied review on May 27, 2021.  (Filing No. 7-2 at 2.) On July 22, 2021, Shawn C. timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner.  (Filing No. 1.)  Jurisdiction is also proper according to 42 U.S.C. § 1383(c).

## II. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).  To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments,

20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [his] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)[2]; Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184). At step four, if the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy. *Id*.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. For the purpose of judicial review, "substantial

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning DIB and SSI, which are identical in most respects. Cases may reference the section pertaining to one type of benefit. *See Craft*, 539 F.3d at 676 (citing 20 C.F.R. § 404.1545(a)(1)). Generally, a verbatim section exists establishing the same legal point with the other type of benefit. *See, e.g.*, 20 C.F.R. § 416.945(a)(1). The Court will detail any applicable substantive differences but will not usually reference the parallel section.

evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

### III.    FACTUAL BACKGROUND

When Shawn C. filed his applications, he alleged that he could no longer work because of a heart problem, degenerative disc disease, sciatica, depression, anxiety, and a broken pelvis. (Filing No. 7-6 at 7.) He was 43 years old when his alleged disability began. (*See* Filing No. 7-5 at 13.) Shawn C. had earned a GED. (Filing No. 7-6 at 8.) He had worked as a cook and machine operator. (Filing No. 7-6 at 9.) The relevant evidence of record is amply set forth in the parties'

4

briefs, as well as the ALJ's decision and need not be repeated here.  Below are the facts relevant to the Court's disposition of this case.

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Shawn C. was not disabled.  (Filing No. 7-2 at 29-30.)  He found that Shawn C. last met the insured status requirements of the Social Security Act on June 30, 2019.[3]  (Filing No. 7-2 at 16.)  At step one, the ALJ found that Shawn C. had not engaged in substantial gainful activity[4] since August 2, 2016, the alleged onset date.  *Id*.  At step two, the ALJ found that:

> [Shawn C. had] the following severe impairments: degenerative disc disease of the lumbar spine with spondylosis and stenosis; lumbar radiculopathy; closed fracture of the left ischium; coronary arteriosclerosis with a history of myocardial infarction; obesity; bilateral hip osteoarthritis, status-post right total hip arthroplasty; history of polysubstance use disorders, in remission; hypertension; high cholesterol; depressive disorder; and anxiety disorder.

(Filing No. 7-2 at 16-17 (citations omitted).)  At step three, the ALJ found that Shawn C. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Filing No. 7-2 at 18.)  After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he requires an unskilled entry level job involving simple routine tasks that can be learned on the job within in [sic] 30 days or less that is non-fast-rate production, defined as involving no conveyor belt or assembly line work and no hourly quotas.  He can lift and/or carry 5 pounds frequently, and 10 pounds occasionally (from very little up to 1/3 of an 8-hour

---

[3] Shawn C. must prove the onset of disability on or before his date last insured to be eligible for DIB.  *See Shideler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012); 20 C.F.R. § 404.131.  The ALJ's subsequent findings properly addressed the period at issue spanning both Shawn C.'s DIB and SSI claims: beginning on August 2, 2016, his alleged onset date, through the date of the ALJ's decision.  (*See* Filing No. 7-2 at 29.)

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

> workday). He can stand and/or walk (with normal breaks) for two hours in an eight-hour workday, but can do so for only 15 minutes at one time before needing to sit for 2 minutes before resuming standing and/or walking while remaining on task. He can sit (with normal breaks) for six hours in an eight-hour workday, but can do so for only 15 minutes at one time before needing to stand and/or walk for 2 minutes before resuming sitting while remaining on task. He can perform pushing and pulling motions with the lower and upper extremities within the aforementioned weight restrictions for two-thirds of an 8-hour workday. He can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for two-thirds of an 8-hour workday. He needs to avoid hazards such as moving machinery and unprotected heights, but does not need to avoid hazards typically found in the workplace such as boxes on the floor or ajar doors. Job responsibilities do not include commercial driving. Job responsibilities do not include the use of hand-held vibrating or power tools. He needs to be restricted to a work environment with good ventilation that allows him to avoid frequent concentrated exposure to extreme heat, extreme cold, and high humidity. He can perform occasionally: balancing, stooping, crouching, but he needs to avoid climbing, kneeling, and crawling[.]

(Filing No. 7-2 at 20-21.) At step four, the ALJ found, considering the VE's testimony and Shawn C.'s RFC, that he could not perform any of his past relevant work as a cook and lathe operator. (Filing No. 7-2 at 28.) At step five, the ALJ found considering the VE's testimony and Shawn C.'s age, education, work experience, and RFC that he could have performed other work with jobs existing in significant numbers in the national economy in representative occupations like an inspector, final assembler, and sorter. (Filing No. 7-2 at 28-29.)

## IV.   DISCUSSION

Shawn C. makes three assertions, that: (1) the ALJ's step five finding that he could perform other work with a sit/stand option is not supported by substantial evidence; (Filing No. 9 at 20-21); (2) the ALJ's step two finding that venous insufficiency was a non-severe impairment is not supported by substantial evidence; *id*. at 21-22; and (3) the Appeals Council's failure to consider Listing 1.18 is harmful error; *id*. at 22-23. The Court will address the arguments in turn to the extent necessary to resolve the appeal.

A.   **Sit/Stand Option**

The ALJ found that Shawn C. was capable of performing a reduced range of sedentary exertional work with specific limitations, including a sit/stand option that:

> He can stand and/or walk (with normal breaks) for two hours in an eight-hour workday, but can do so for only 15 minutes at one time before needing to sit for 2 minutes before resuming standing and/or walking while remaining on task. He can sit (with normal breaks) for six hours in an eight-hour workday, but can do so for only 15 minutes at one time before needing to stand and/or walk for 2 minutes before resuming sitting while remaining on task.

(Filing No. 7-2 at 20.) The ALJ put to the VE a hypothetical question describing an individual with the same limitations as the ALJ's ultimate RFC finding, including a virtually verbatim description of the sit/stand option that positional changes could be made "while remaining on task." (*See* Filing No. 7-2 at 55.) The VE testified that an individual with those limitations could perform work in representative occupations like an inspector, *Dictionary of Occupational Titles* "DOT" occupational code, 669.687-014, final assembler, DOT code 713.687-018, and sorter, 521.687-086. (Filing No. 7-2 at 55-56.) The VE's testimony was the basis of the ALJ's step five denial that concluded that Shawn C. could perform the representative occupations. The VE's testimony also established that employers have a limited tolerance for off-task behavior—one out of eight hours was too much—but the VE did not give an opinion about the precise threshold in the competitive economy. (Filing No. 7-2 at 57.)

Shawn C. contends:

> In order to perform these jobs, with the sit/stand option in the RFC, the jobs would have to [involve] variable tasks so that an individual could stay on task while standing and/or walking. All of these jobs involve inspecting, sorting, and assembling small objects, which casts doubt on the ability of performing them while sitting only for fifteen minutes at a time.

(Filing No. 9 at 20.) He cites the SSA's guidance in SSR 83-12 that unskilled occupations are ordinarily structured so that the worker cannot ordinarily sit or stand at will. *Id*. at 21. SSR 83-12 (S.S.A. 1983), 1983 WL 31252, at *4, explains:

> There are some jobs in the national economy—typically professional and managerial ones—in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base.

The ALJ did not find that Shawn C. needed to have a sit/stand option at will, *i.e.* that he was free to sit, stand, and walk as much or as little as he chose. The ALJ also did not find at step four that Shawn C. could return to any past work. But Shawn C.'s point is well taken that most jobs have ongoing work processes that demand that a worker be in a specific place or posture for at least a certain length of time to accomplish a certain task.

SSR 96-9p, (S.S.A. July 2, 1996), 1996 WL 374185, at *2, discusses a step five determination based on a reduced range of sedentary exertional work:

> The impact of an RFC for less than a full range of sedentary work is especially critical for individuals who have not yet attained age 50. Since age, education, and work experience are not usually significant factors in limiting the ability of individuals under age 50 to make an adjustment to other work, the conclusion whether such individuals who are limited to less than the full range of sedentary work are disabled will depend primarily on the nature and extent of their functional limitations or restrictions.

Concerning the effect of a sit/stand option on the availability of sedentary work, the ruling provides similar guidance:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for

>a full range of unskilled sedentary work will be eroded.  The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand.  The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.  It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

*Id*. at *7.  The ALJ ostensibly complied with the rulings by seeking the testimony of the VE and being specific about Shawn C.'s need to change positions, including how frequently and for how long.  Ordinarily, a VE's testimony in response to a specific question including a sit/stand opinion is substantial evidence that satisfies the Commissioner's burden at step five to demonstrate the existence of a significant number of qualifying jobs.  *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000).  But here, rather than allowing the VE to testify about whether the work processes of the representative occupations could be performed with the specific sit/stand option, the ALJ asked the VE to assume that the individual would remain on task while making positional changes.  The extent to which an individual can remain on task with a sit/stand option is a vocational question that relies on the expert opinion of the VE to determine if the work processes can be accomplished efficiently enough to satisfy competitive tolerances of employers.  *Pollari v. Berryhill*, 2019 WL 293238, at *2 (E.D. Wis. Jan. 23, 2019).  When the ALJ's questions to the VE do not resolve the issue, there is a critical "gap in the record."  *Id*.

For examples, according to the DOT, one of the occupations is a final assembler in the optical goods industry.  DICOT 713.687-018, 1991 WL 679271.  The worker "[a]ttaches nose pads and temple pieces to optical frames, using handtools: Positions parts in fixture to align screw holes. Inserts and tightens screws, using screwdriver."  *Id*.  It's difficult to imagine how a worker could perform the job doing precision work with small parts and tools if he needed to stand and/or walk for two minutes after every 15 minutes of sitting.  Another occupation is a nut sorter in the canning

and preserving industry. DOT, DICOT 521.687-086, 1991 WL 674226. The worker "[r]emoves defective nuts and foreign matter from bulk nut meats: Observes nut meats on conveyor belt, and picks out broken, shriveled, or wormy nuts and foreign matter, such as leaves and rocks. Places defective nuts and foreign matter into containers." A worker may be able to stand—but not necessarily walk—and still pull the material from the conveyor belt and perhaps remain productive depending on how often his attention was typically needed in the occupation. The Court does not endeavor to resolve these questions. The Court also does not assume that the DOT descriptions are necessarily current. But the Court cannot assume that the ALJ has any basis to determine that an individual with Shawn C.'s sit/stand option could perform all sedentary exertional occupations while remaining on task. The VE's expert opinion was needed to resolve the question based on consideration of the specific work processes of the representative occupations. If the ALJ had put a proper question to the VE and Shawn C.'s counsel had not challenged the VE's opinion at the administrative level, the ALJ would have been entitled to rely on the VE's uncontradicted expert opinion. *Liskowitz v. Astrue*, 559 F.3d 736, 745-46 (7th Cir. 2009). Here, without a proper foundation, the Court cannot conclude that the VE's testimony fulfils the Commissioner's step five burden. Accordingly, remand for further consideration at step five is necessary.

B.      **Other Arguments**

The Court declines to analyze the merits of Shawn C.'s remaining arguments. The ALJ determined that Shawn C.'s lower extremity edema from venous insufficiency and his related impairments including cellulitis did not meet the durational requirement to be considered beyond step two because "they have not lasted and are not expected to last a minimum of 12 consecutive months." (Filing No. 7-2 at 18 (citing 20 C.F.R. §§ 404.1509 and 416.909).) Based on the need to remand for further consideration at step five, further development may illuminate whether these

impairments met the durational requirement to be considered, at least to the extent that they may pertain to Shawn C.'s SSI claim.  *See supra* note 4.

Shawn C. does not present any legal authority for the proposition that the Appeals Council needed to consider a regulatory change after the ALJ's decision that created a new listing, particularly when the Appeals Council denied the request for review and left the ALJ's decision as the final decision of the Commissioner.  The Seventh Circuit has held in a social security disability context that "[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."  *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)).  Shawn C.'s argument concerning the Appeals Council is waived.

Shawn C. requests that the case be remanded with instructions to award benefits.  (Filing No. 9 at 23.)  "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'"  *Briscoe ex rel. Taylor*, 425 F.3d at 355 (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).  Shawn C. has not explained how his appeal supports the Court taking the unusual step of remanding with instructions to award benefits.  The issue that the Court ordered remand on specifically asks for further development to resolve outstanding questions with proper expert testimony.  If Shawn C.'s impairments causing his edema symptoms were found to be severe impairments that met the durational requirement, the ALJ may credit his need to elevate his legs.  But further development is necessary to determine whether those impairments met the durational requirement, and the Court cannot make credibility determinations about the extent of a claimant's limitations based on his subjective symptoms.  Accordingly, the proper disposition is a remand for further proceedings.

## V. CONCLUSION

For the reasons stated above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 9/8/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jonelle L. Redelman
REDELMAN LAW LLC
jonelle@redelmanlaw.com

Brian J. Alesia
SOCIAL SECURITY ADMINISTRATION
brian.alesia@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov